This is a case of first impression. All of Mr. Weed's convictions were based on the theory that he conspired to sell unregistered stock in violation of the registration requirements of Section 5 of the Securities Act of 1933. I didn't see that in the indictment. I didn't see anything about a conspiracy to sell unregistered securities. Paragraph 12 of the indictment, which identifies the object, is that one of the objects of the case was to sell unregistered to sell unregistered securities of Cityside, Causeway, and Ubex in violation of the Federal Securities Laws, which would be Section 5 of the 1933 Act. The parties agree that Section 389 of the Act governs the securities at issue. And Section 389 of the Act creates a class of exempt securities found in Section 3. Before you get to that, can we talk about the standard of review? If we're even going to get to that issue. Yes, Your Honor. The standard of review here is de novo. We filed a general motion under Rule 29 for judgment of acquittal. And in United States v. Marston, this Court recognized that a general motion for a judgment of acquittal preserves all the issues. It preserves all the issues that were raised at trial. It does, it doesn't, it cannot preserve issues that were never raised during the trial. Well, I don't think that that's the case, Your Honor, because in this particular instance... Let's just back up as to what the order is. So your theory is that a defendant can stand by the government, put a defense in his pocket, not mention it during pre-trial proceedings and trial, and then spring it after he gets an adverse verdict by a Rule 29 motion, and our case law sanctifies that procedure? I wouldn't characterize it that way. The government has the burden of proof to prove each essential element of all crimes... That's true, and you can raise any defense to the government's failing to meet the burden of proof that you need and preserve during the trial. What the government did in this case is put in affirmative proof of the applicability of Section 3A9. It offered the convertible notes, it offered the securities, it put in all the evidence that showed that 3A9 was satisfied. And 3A9 creates an exempted security. And in this case, everybody agrees, all of the securities were exempted securities under 3A9. The core issue of the case isn't whether that particular section of the statute applies. The core issue is what does it mean? And we say... Everybody agrees that these are exempted securities under 3A9? Yes. The government conceded that 3A9 applies to the conversion of convertible debt to common stock, and that this entire case dealt with financing of startup companies by the use of convertible debt. But you also agree that 144... You all agree that 144, which was referenced in the letter, was a misstatement, that in fact these were not Rule 144? Rule 144 is totally inapplicable to these securities because by its very terms and in the preliminary note to Rule 144, it only applies to non-exempted securities where the seller is trying to afford himself or herself of the advantage of a Section 4 exemption. So you agree that Mr. Weed's reference to 144 in his opinion letter was false, was wrong? It was an incorrect reference as to why the securities were exempt. What the purpose of the opinion letter is, the transfer agent works for the company. They get paid $200 to $300 to issue the stock certificates. What the transfer agent, who is not a trained person in securities laws, does is they get an opinion letter of the lawyer, they check the box off, they issue the securities if the magic words are there. The magic words in this case are, are the securities exempt? Now Mr. Weed gave the wrong reason for the exemption, but he was dead on right as a matter of law as to the exemption of the securities. And that's really the core of this case. But if that's true, then the defense that you're now asserting should have been raised under Rule 12 pre-trial. It couldn't have been, Your Honor, because to satisfy the requirements of 3A9, it requires evidentiary proof. In a 12B motion, a pre-trial motion on a motion to dismiss, you can't look into the evidence. It's not alleged in the indictment. You accept the allegations of the indictment. With all due respect, I don't think that's the way Rule 12 works. I think if there are disputed issues of fact, that may preclude or excuse the failure to file a Rule 12 motion. But you are saying that on the facts that are undisputed, these are exempted securities, and that was true before, during, and after the trial on your view of the case. My view is that the evidence had to be put before the trier of fact to satisfy all of the requirements of the exemption in their rigorous. But not only that, the indictment itself challenged the debt conversion in and of itself as being collusive, which raises questions of fact. This motion, while some lawyers may have brought it as a Rule 12 motion, it certainly wasn't required to be brought, and there's absolutely no certainty in a case where you have to satisfy the requirements of an exemption that you would have won. This takes me back to our first questions about the standard of review. So in reviewing the testimony of the transfer agents, the testimony is pretty consistent. It was important to know whether these were affiliated parties or not. We would not have approved it had we known that they were affiliated. No questions were asked about the 3A9 potential exemption. And so it seems to me that to bring that up after the trial, the case wasn't defended on that basis. So to bring it up after the trial makes it very difficult to say we should be doing a de novo review of it. Let me just focus on the transfer agent testimony as your Honor has brought it. First of all, the transfer agent was, in this particular case, a community college graduate with no training in securities laws. Her statement about the law was incorrect. An affiliate can hold and can sell exempted securities. But my point is, so she says that's important, and then this is Ms. Merrill we're talking about? Yes. And then she says, because I want to know if these are, I forget what they're called, free trading. If 3A9 had been part of the case at that point, we might have some idea about whether it was material or not. But we simply don't. Because all that the case was about was 144 at that point. The 3A9 comes in after the trial is over. So I'm now back to, I don't think necessarily that it always has to be sandbagging, but that's what we have to guard against. So I'm really still stuck on our standard of review. I think when there's a challenge to the sufficiency of the evidence, and the government charges a conspiracy that shares were sold that were unregistered and that that was illegal to do that, and that the proof that they put in at trial was that, in fact, the conspiracy never had to be registered. If all the evidence at the trial was about an affiliate rule and breaking rule 144, it was totally inapplicable. But you talk about paragraph 12 and the object of the conspiracy to be to sell unregistered securities. But when I read the counts, I read that the object is to engage in fraud, wire fraud, and securities fraud. Respectfully, Your Honor, I don't think that's the object of the conspiracy. Having drafted many of these for 10 years of my career, the object in purpose is stated, the object is to knock down the World Trade Center, all in violation of whatever the statute happens to be. It's what was the conduct that the defendant intended to do. Defendants don't generally intend, in theoretical terms, to violate the securities laws. They intend, we're going to put shares into the marketplace that are unregistered. And that's basically what the entire case was about, that issue. And the government knew, by the way, in terms of fairness in this case. But there was testimony that if investors knew that these were affiliated parties, they wouldn't buy the stock. Again, I don't think that that's the test of materiality. The test of materiality was, if you look at Justice Kagan's decision in Abramski versus the United States in 2014, she sets forth the framework for analyzing materiality. It isn't simply that the transfer agent would not have issued the shares. Materiality is mixed fact in law, by nature. And the Supreme Court has recognized it as such. Here's what Abramski, how the framework of Abramski was. And you may recall in that case, it was a straw who bought a gun from a federal gun dealer for his uncle. And his uncle was eligible to own the gun. The problem was he lied on the ATF form and said he was the actual buyer. It wasn't for anybody else but himself. And so his defense was, well, it wouldn't have mattered. My uncle was eligible to buy the gun, so therefore it wasn't material, even though I lied. And the way the court analyzed the situation is that here's what the inquiry is. If the truthful information were given, could there have been a lawful sale of the firearm? And what Justice Kagan did to reach that point was analyze the Gun Control Act, its purposes, and its provisions extensively. And what the court did is said, well, in the first instance, he said, if I'm buying it for my uncle, the gun couldn't have been sold, because the dealer by law has obligations at the point of sale. The dealer has to confirm identity, photograph. The dealer has to do an NICS background check of the actual buyer. The dealer has to maintain accurate records in their files, so if the gun ever shows up at the scene of a homicide, buying serial number can be traced back to the point of origin. And what the court concluded in Abramski was, even if the truth were told, that gun could not have been sold. Not the case here. If the truth had been told that these were, in the opinion letters, exempt securities, that transfer agent had no choice. That's a check the box, deliver the stock certificates. The fraud involved here is that he represented that these were not affiliates. And it goes back to the chief's question to you about, aren't we dealing with security fraud here, and that was with a violation of selling unregistered securities. And everything in the read of the indictment, and even in the charge, except for perhaps some language that isn't quite as clear, points to the charge being security fraud. And you all agree that the statement about 144, and these folks not being affiliates, was a misstatement. But they're not material for the reasons I just said. Well, they are material because if the truth were known, the investors wouldn't have purchased. That's just simply not the case, Your Honor. If the truth were, first of all, the public never, they never get an opinion letter. If I could just answer your question, I see that. Of course, go ahead. The public never gets the opinion letter written by the company's lawyer to its agent, the transfer agent, that costs $200 to $300. That's what it is, to issue the stock certificates. What the public would have known is that from a broker or in the public marketplace, they could buy the securities and that they weren't restricted because an exempt security has no restrictive legend stamped on it. So this business about the opinion letters, the public, the investors never see that. So nobody was defrauded here. The people who bought the stock had no clue whether they were owned by an affiliate, exempt, not exempt, but the question about whether these people were affiliates or not doesn't matter when you have exempt securities. Anybody can sell them. You've just made a factual statement. The opinion letters never go to the investors. Where do I find that in the record? In the trial record. I don't believe it's in the record, but the opinion letters in this case only, the evidence in the record was that it went to the transfer agent. There was no evidence in the record. Nothing in the record of the trial that confirms the statement you just made that the opinion letters aren't seen by the investors. Then I'll qualify my statement, Your Honor. The statement is that these opinion letters, every single one of them, it was admitted in evidence at this trial. The only evidence of the person who saw them was, in this case, Amy Merrill, the transfer agent. And there was no testimony elicited by the government that they ever went anywhere else. Thank you. Good morning. May it please the Court. My name is Alex Robbins, appearing on behalf of the United States. This is a case about a lawyer who lied repeatedly to a regulatory gatekeeper, a securities transfer agent, so that his conspirators could get securities that they could then turn around and sell to the general public. It is not a case about, in the words of Mr. Wiggs and Higgins, curbing the expansion of the regulatory state. One can do that through a civil action without committing fraud. Let's start with a statement that your brother made. Does everyone agree that these securities are within the ambit of Section 3A9? No, we did not firmly concede that. We did not contest it because we had no basis to know whether the other requirements of 3A9 were met. As my colleague pointed out, there are a number of them. There was nothing in the record about that because that wasn't a litigated issue at trial. Such as whether they are an existing security holder, whether a commission was paid, those sorts of things. In particular, the commission point. I'm certainly not aware of any evidence in the record one way or another on whether a commission was paid. Those kinds of issues were never joined at trial. Correct. As a matter of general civil law, as we point out in our brief, if somebody wants an exemption from Section 5, the registration requirements of the Securities Act, it is the burden of the person seeking exemption to prove up all the elements of the exemption. We didn't contest just the conversion of the debt to the equity securities. We didn't contest that at trial, or post-trial rather, because there wasn't any evidence about it one way or another. So we argued on other grounds because this is a criminal case, not a civil case. But we don't affirm or concede that. We just don't know. I think more fundamentally, the problem with the defendant's argument in this case is it's not really a materiality argument. As I listened to my colleague, the argument isn't that these admitted false statements didn't matter to the recipient of the false statements. Amy Merrill testified that they did matter. The argument is that this fraud wasn't necessary because there was another way that the defendant could legitimately have gone about his business. But fraud being unnecessary is not a defense in a fraud case. That's one of the tragedies of fraud. Fraud is often unnecessary. It's often the case that somebody could have legitimately gone about their business and didn't need to commit fraud in the first place. That's never a defense. Your brother's final point when he was standing where you are, it seemed to me was that the victims, as opposed to the intermediaries, never got any false statements. I think my colleague was responding to our point in the red brief that there was evidence that investors cared, would find material, whether they were buying affiliate shares or not. In other words, an investor would care whether these shares were being dumped on the market by an insider or someone who wasn't. His point was it doesn't matter at all.  Again, this is an evidentiary issue, so it's really something that isn't an issue at all. We would defer to the jury's verdict. But to the extent we want to discuss the evidentiary issue, the recipients, if we're just looking at the investors, an investor doesn't need to be the direct recipient of a false statement in order for there to be securities or wire fraud. Investors, let's just assume for the minute, for a moment, that my colleague is correct about his 389 argument, which is not. Assume that that's right. The way the marketplace works now, since this argument has been rejected by the SEC since 1940, is that when investors buy shares in this type of situation, because of the way Rule 144 operates, when you have a large volume of shares coming from insiders or coming from someone in the market and you buy them, you're confident that these are not shares being dumped by insiders, because that's the way Rule 144 is constructed. If an affiliate wants to sell shares, as we point out in our brief, there's a way to do that, but there are stringent volume requirements. You can only sell a little bit at a time. So investors who just buy a huge block of securities know, under the way the regulatory scheme is currently administered, even if my colleague is right, that they're buying shares that aren't being dumped on the market by an insider. So that was simply our point, but again, that's an evidentiary point. How much of this argument is record-based? The sites we have is at page 22 of our brief, footnote 13. We cite the testimony of Flaherty, I believe, saying that one of the reasons, in addition to we needed these opinion letters to get free trading shares, he also says that I would think, based on his extensive experience in doing this, that investors wouldn't want to be buying my shares that I'm dumping on them. We didn't have investor testimony because it wasn't required, because the direct recipient of the false statements here are the transfer agents. In particular, we had the one transfer agent, Amy Merrill, testify that she thought the lies about the applicability of Rule 144 were material. We also have Flaherty saying that we needed opinion letters, false opinion letters were necessary, and we have the testimony of the FINRA lawyer who said that you need these opinion letters in order to get free trading securities. So the evidence in the record is primarily about the effect of the lies on the direct recipient of them, the transfer agent. But your basic point, as I understand it, is once the defendant made the decision to seek the blessing of the transfer agent, through the use of Rule 144 and untruthful statements about affiliate status and the like, that he can be held criminally responsible for that fraud, even if there was an alternative way in which he could have reached the same result without committing the fraud. That's exactly right, Your Honor. And if I could give an example, and I don't think my colleague would disagree with this example, although you can ask him. If I stand up here and I have two grounds for affirming the judgment below, one of which is a tricky novel issue, but I'm right on it, and the second one is complete fraud and totally made up, and I'm lying to the court, and I do that and I run both arguments, I've committed fraud on the court. The fact that my first argument worked isn't a defense to that. That analogy only applies if we agree with the government's position that the charge is security fraud and not a conspiracy to sell unregistered securities. That is correct, Your Honor. So how do you respond to the appellant's attorney's argument about paragraph 12 of the indictment, which seems to imply the object of the conspiracy was to sell unregistered securities? At the risk of taking up too much of this court's time, I could read it. In mine, it's on the appendix, page 16. In my appendix, it's paragraph 13, but it says, One purpose of the conspiracy was to sell or offer, or offer to sell, unregistered securities of Seaside, Causeway, and Ubex in violation of federal securities laws. That's in the general background purposes and objectives of the conspiracy. And, of course, I think my colleague knows well what an object of a conspiracy is. As the court pointed out, it's the substantive offense that is being charged. You could have a conspiracy to commit three offenses. Those are three objects. This court uses the term like that in Fernandez, the Supreme Court uses it in Griffin, and all the things we cited in our brief. I think I would simply rest on the indictment. This court is capable of reading the indictment and determining what the objects of the conspiracy were here. I would also point out that my colleague, in the later part of his brief, agrees with this. In the constructive amendment section, it says that the charges here were securities fraud, not selling unregistered securities. So just on the undisputed historical, physical facts of what happened here, those facts, I think, are undisputed. And by comparing those facts to the elements of the crimes charged, Mr. Weed is guilty of securities fraud and wire fraud. There was a false statement that's not disputed anymore. There was a connection with a securities transaction or use of the wires for wire fraud and an agreement conspiracy. And the statement was material. It was capable of influencing the person to whom it was directed. And we have that for the testimony of the transfer agent, as well as a number of other witnesses. That's really the beginning and the end of the analysis, as far as we're concerned, because this is a criminal case, and I'm not representing the SEC. We have made the argument that his securities civil attack doesn't work anyway, and we would be happy to discuss that, but we don't think it's necessary for the court to go there to dispose of this criminal case. Unless the court has questions about the 3A9 issue or anything else? There's a line in the amicus brief about the practical effect of the government's position being that 3A9 securities will have to be registered before any transfer takes place. Do you know how that actually works? I think so, Your Honor. The way it works is that in the securities laws, Section 5 is a broad prohibition on selling any security at all without a registration statement of prospectus. And then the securities laws have a variety of exceptions to that. Some of the exceptions, as we agree, are intrinsic, like securities issued by the United States government. They never have to be registered. Most of the exceptions are transactionally based. They're based on the nature of the transaction or who's doing the transacting. So normally you would have, in a case like this, for example, as Mr. Reid certainly thought this was the lay of the land, that's why he lied about Rule 144, is that you can use 3A9 to convert your, say, debt securities or preferred shares to common stock. So now you have restricted securities. If your goal in doing that is to be able to then transfer them in the marketplace, when do they get registered as a practical matter? As a practical matter, you would find, in most cases nowadays, people find exemptions to get around the registration requirement because it is expensive. So, for example, an insider could invoke Rule 144, hold the securities for a year, and then sell, I think it's 1%, you know, every week. Or you could have a private placement to a number of people that's sufficiently small that under the other securities exemptions that you don't need a registration statement. Or you could have a purely, for example, intrastate offering, an offer of the securities to people who live in one state. There are a variety of different transactional exemptions you could use, but just having securities that you got because you as an insider converted your debt to equity, no, you can't then turn around and dump those securities in the market. That would eviscerate the entire point of the security. You have answered my question, and I understand that my question had nothing to do with the record, and I'm just going to take it as argument, but I appreciate it. Thank you. Anything else? No, thank you. All right, let's go to those questions. We ask that you affirm the judgment below. Thank you. The first one would address the point about whether the government agreed about 389 applying. The government in the docket 149 at pages 5 and 6. The government does not dispute the point here. Section 389 exemption likely did apply to the conversion of the notes related to the GFY companies into securities. 149 is the opposition to the motion, the post-trial motion. Yes. So it was not an issue during the trial, or at least that doesn't support it. At the hearing. Post-trial. Yes, post-trial. Okay, got it. And at the hearing of the record appendix on page 1445, the government again agreed that the shares in question were 389 shares. What has happened here is a man has been tried and convicted for something that was not a crime, because he wrote a letter that cited the wrong section of the securities code that didn't matter. And it's quite clear when we look at the statute, 389 creating an exempt security, that they never have to be registered. If they're one of the 13 classes of exempted securities, once they're in that class and they're subject to the definition, they never have to be registered. And that was made clear in the House report, which is in the addendum of the defendant's brief on page 17, when the House said, by placing these exemptions, which included 389, under section 3, it has made clear that the securities entitled to exemption on original issues retain their exemption. The position they're taking here, which by the way, Judge Woodlock and even the government conceded at the hearing, that if you decide to move the section 389 issue our way, you would have granted a new trial. He said that on the record. Because the whole trial was about affiliates and control and a rule of the securities laws that didn't apply. And when the SEC twice unsuccessfully tried to amend the statute, because 389 used to be a transactional exemption, which is what they're arguing now, they want you to treat it as a transactional exemption, Congress moved it from section 4 to section 3. And in 1941, the SEC submitted a report to Congress for proposed amendments to the securities laws. And they asked in the report for a redesignation of certain security exemptions, including 389, because it is an exempt security. And the problem that this creates is that the SEC, which took part in this trial, knew and told Congress these were exempt securities. When they were conducting the undercover investigation, they intercepted a call where Mr. Weed said they're 389 securities. And when they did their undercover operation and he wrote the three opinion letters pertaining to Amigare, he wrote that they're subject to exemption under 389. They brought an indictment. They tried by way of an indictment to change the law because they were unsuccessful with Congress. And that's a problem. When the executive branch can come in and try to alter an act of Congress through a criminal indictment, there's a policy and separation of powers problem here. They shouldn't be permitted to do it. And we ask that you vacate all of the convictions and your judgment of acquittal. Thank you. Thanks.